Bondi case number 23 8 1 2 1 Good afternoon. Good afternoon, your Honor. May it please the Court. My name is Matthew Wembo of Perkins Coie, and I'm representing Petitioner Mr. Marcus Ramsey. I'm here today because Mr. Ramsey was removed from the United States, but was not actually removable. This Court's 2023 decision in Minter confirmed that. Prior to Minter, Pasquale had been cited for years to hold that the statute underpinning Mr. Ramsey's removal was a categorical match to the CSA. So let's say that we agreed with you on the underlying issue, that underlying issue, then I think it's right that you can correct me if you think I'm wrong, that the BIA was nevertheless entitled to deny his motion for reopening on the ground that he was too late. I'm sorry? On the ground that his motion was filed in an untimely way, and that he was not entitled to equitable tolling. So I think that that's maybe the issue that I'm certainly interested in. Yes. The BIA was entitled to weigh the facts considered and find whether Mr. Ramsey was diligent in bringing his motion or not. But here, what the BIA did was abused that discretion by making a fundamental error of  It said that he needed to move based on Harbin. And it did that by misreading the arguments that were presented in Mr. Ramsey's original motion. They said, and I quote, that Mr. Ramsey admitted Harbin was dispositive of this case, which it wasn't. I don't think the government disputes that. The BIA did not make that finding. No one below has said Harbin categorically undermined Mr. Ramsey's original removal. So the issue is, is it Harbin or is it Minter? And to the extent the Court is asking that question, that is a question of law. So do we have to parse? Are you asking us to parse through his submissions to see or determine if, in fact, he was relying on Harbin as opposed to Minter? What are you asking us to do with respect to that issue? With respect to that issue, if the Court were to look to Mr. Ramsey's original motion, which the Board relied upon in reaching its decision to find that Harbin applied here rather than Minter, Mr. Ramsey did not make that argument. Well, I'm reading the BIA's immigration judge's decision, and the immigration judge says that the respondent argues in his motion that Harbin is dispositive and establishes that his criminal offense is indivisible. So it sounds to me as though, I think this may have been your predecessor, counsel, made the argument below that Harbin controls, and then, of course, you had Minter coming along later. So why aren't you bound by that concession? Because that concession was not made below, Your Honor. That is a misreading of the arguments that were made to the BIA, and that's the fundamental issue that the Board advanced here. The Board relied on a misreading of Mr. Ramsey's petition to say that he argued Harbin was dispositive. Mr. Ramsey argued that Minter was dispositive. So is it enough for us to just remand back and say you misread his submission in connection with the Harbin versus Minter issue in light of the fact that we have concluded that he did not make that concession? Redo? Is that what you want? At a minimum, yes, Your Honor. But this Court could also go further and find that as a matter of law, by moving within 30 days of Minter's issuance, which indisputably undermined his original basis for removal, that is entitled to equitable tolling because providing a motion to reopen within 30 days of issuance is diligent. He had no basis to move any earlier. And what Mr. Ramsey argued in his brief with respect to Harbin was that Harbin answered a question that Minter did not directly address and wasn't even relevant to Mr. Ramsey's particular case anyway. And what Harbin answered was that if the Court had to reach a, or if the BIA had to reach a divisibility question, then Harbin's analysis resolved that with respect to the term narcotic drug. Well, this is what he was represented by Brooklyn Defenders before, right? That's correct, Your Honor. And this is a reading from the Brooklyn Defenders brief. The decision in, quote, the decision in Harbin clearly renders the narcotic term, the narcotic drug term, indivisible as well. The text of the statutes in Harbin and Minter are structured almost identically. That's correct, Your Honor. The prior counsel did argue that. The issue, though, is that in order to undermine Mr. Ramsey's basis for removability, you need two findings. You need overbreath and you need indivisibility. Oh, you also need a concession by — doesn't a concession by counsel do it? But that's only on indivisibility, you're saying. That is only as to indivisibility, which Minter did not answer. And indivisibility was not even relevant to Mr. Ramsey's particular motion, because he was charged for cocaine, which Minter found was indivisible regardless. So in this case, Minter was the act that Mr. Ramsey needed to move on, and he did so within 30 days. Having an indivisibility finding based on Harbin doesn't undermine his original removal at all. Now, I'd like to just address some of the arguments the government made in its brief, because it says that Mr. Ramsey should have moved with respect to Harbin. The government argues the clock to bring a motion to reopen starts when there is any available argument to challenge a removal order, no matter how likely it is to succeed, and petitioners need to bring every motion raising every available argument to be diligent. In other words, petitioners must continuously challenge their removal orders, presenting arguments both good and bad. There are several problems with this view. First, the board never suggested that this is the standard, and so the government's arguments here violate Chenery. In fact, the board already rejected the government's position and denied motions based on what it calls incremental changes of law. And here, Minter was the fundamental change in law. And second, Congress gave petitioners only one motion to reopen and one motion to reconsider. Reading the statute as permitting motions for any available argument is unreasonable. Your arguments are persuasive, but how do you get beyond Judge Nardini's decision in Aravello from January of this year? For Aravello? Seems to me that almost closes the door. So Aravello was among a line of cases challenging where petitioners would challenge their removal due to statutorily defective NTAs. And the question was, in Aravello, was whether the defect was jurisdictional, which this Court rejected as it had prior, and whether the petitioner there had forfeited raising the defect by not raising it sooner. For the second question, the defect was apparent on the face of the NTA, and there was no authority for closing, raising challenges based on that defect, even though the BIA hadn't previously considered that. And there are at least two distinctions here, though. Raising objections to defective NTAs have been treated post-Ferraria as facial objections to the charging document. That's akin to the Rule 12b motion, raising any preliminary issues with that original charging document. Either you bring it early or you forfeit it. But that doesn't speak to change-of-law circumstances that we're facing here. And it doesn't suggest that petitioners need to bring every available argument or be the first movers in a change-of-law scenario to demonstrate diligence. The last thing I'll say, Your Honor, is here, there was clear countervailing authority, because Pasquale had been cited for a decade that there was a categorical match between 220.39, which is what was the basis of Mr. Ramsey's removal, and the CSA. And that's what Minter undermined. So there are different issues at play in Arevalo. Thank you, Your Honor. Judge Kovanec, any questions? No, no questions. We'll hear from the government. Mr. Kinney. Good afternoon, Your Honors. May it please the Court. I'm Brett Kinney on behalf of the Attorney General. This Court should deny the petition for review as to the petitioner's untimely statutory motion to reopen or reconsider, and it should dismiss the petition as to the Board's decision not to exercise its sua sponte authority in this case. First, the Board acted well within its broad discretion in denying the petitioner's untimely motion to reopen or reconsider, and in concluding that the petitioner had not exercised the requisite diligence to warrant the rare remedy of equitable tolling. So the gist of your argument rests on lack of diligence. Yes, Your Honor. And that's the ground on which the— Lack of diligence, as I understand it, itself rests on two things, a reading of Harbin, but also a reading of his motion. Is that also correct? Correct, Your Honor. And just to be clear, the Board didn't say that the petitioner— and the government is not arguing— that the petitioner had to move to reopen and argue that Harbin undermined his statute of conviction. Instead, the Board specifically said that Harbin provided him the opportunity to raise the arguments about the overbreadth of the New York statute compared— So what does that mean, provided him the opportunity? It should have put him on notice that those arguments had a chance of succeeding. Yeah, but that— I'm singularly unpersuaded by that, because he's got one chance to make this motion, and you're requiring him— your theory is requiring him to speculate about what the success would be of that motion with no clear precedent supporting it. No, Your Honor. The government and the Board did not require maximum feasible diligence. Instead, it is a well-recognized component of equitable tolling that a petitioner has to pursue and preserve their rights. And notably— So what percentage of success would map into reasonable diligence? 60 percent? 80 percent? 90 percent? What? I don't believe there's a numerical value which can be placed on a chance of success. All right, if you were advising a client who was facing the dilemma I just posed, what would you say to your client? I would tell my client to act diligently. Notably, the petitioner attached to his motion to reopen a decision from an immigration judge in December of 2021, which found that New York penal law section 220.391, the petitioner's same statute of conviction, was overbroad based on the mismatch between cocaine isomers. Notably, Mr. Minter himself in 2021 raised the same arguments about the overbreadth of the same statute of conviction. So as this court noted in Arevalo, somebody has to be the first person to raise a legal argument. It could just as well have been the petitioner in this case as it was Mr. Minter. And the petitioner has provided no reason why he couldn't. And to the extent that he claims that Pascal— No, I didn't think it would succeed. Let me give you this hypothetical. Let's say I am a lawyer counseling a client. I see Harbin well at the end of the pipeline. I believe that Harbin is— that a decision in Harbin is not— it's possible but not likely to give me the result I want. I see that Minter is further back in the pipeline, but I don't—and Minter is a lidpipe sentence. If Minter comes down, I win. But I don't think that the Minter decision is going to come down 30 days after Harbin. What do I do? You act to pursue and preserve your— How do I do that under your theory? By raising your argument. I raise my argument before Minter comes down, after Harbin comes down, although I am very certain that Minter is a winner, that Minter is likely to be a winner, but it's going to come down more than 30 days later. What do I do? You raise the same arguments to preserve them, Your Honor. Notably, due diligence does not— How do I raise them? I only have one opportunity to make this motion. I make it on the basis of Harbin, and then I risk losing. Correct, Your Honor. Even so, Your Honor, then if the board denied the petitioner's motion to reopen, the petitioner could seek judicial review before this court, could seek re-hearing if necessary, or he could petition the Supreme Court for certiorari. And those are all things that the Supreme Court itself pointed out in Gonzales v. Crosby are things that a person could do to diligently pursue their rights. I also think that the Supreme Court's decision in Wallace v. Cato is instructive. There the Supreme Court concluded that equitable tolling was not warranted, where a petitioner tried to raise a 1983 claim and his action would have been barred by Heck v. Humphrey. If, let's say, the prospect of succeeding on Henner was 60 percent, would it be prudent for a counsel, a lawyer, to tell his client to go ahead and take that chance? I can't speak necessarily to all the ethical implications in advising. I can't speak to what would be necessarily effective representation in that. Sure you can. You're a member of the ball. Give me your best shot at it. Yes, Your Honor. If the petitioner is trying to preserve an argument and to act with diligence to set up an equitable tolling argument, yes, they should pursue available remedies. And the available remedies include raising an argument, as Mr. Minter did, as numerous litigants did. Relatively low probability of success, then you're shut out of the court by the one-motion rule. Notably, Your Honor, this Court has concluded that the statutory bar on the limit to one-motion drop-in is itself subject to equitable tolling. So the petitioner could have argued that he was entitled to file more than one motion. Judge, is it your view that the petitioner here remained deportable, removable after Hartman? The petitioner himself states in his brief that he was removable until... What's the government's position? There's an argument that the petitioner was still removable based on the 1227A2B1 charge, the controlled substance charge, because that requires a conviction relating to a controlled substance. And in Deere v. Garland, this Court remanded to the agency for it to consider that issue. But whether he remained... And that's just on the charges, the 1996 charge.  It also... Go ahead. It also appears likely that the petitioner would be still removable for having committed two crimes involving moral turpitude and also for, at any time after admission, having been a drug addict or drug abuser. So those would be things for the agency to consider in the first instance. But the issue, none of that is before this Court. Yeah, none of that is before us. So what's before us is the, you know, the current conviction is before us. And with respect to that, your position is that he would still be removable. I mean, you mentioned other bases, but in terms of what's in front of us, is the government's position that he would still be removable after Hartman? It's possible that he could still be removable based on the controlled substance charge. Anything's possible. What's the government's position? The agency and the Department of Homeland Security would have to exercise its sort of authority first to consider. They would have to exercise the authority to do anything. What's the government's position on the effect of Hartman on his removability? The effect of Hartman on his removability did not impact his removability, because that related to his, that related to New York penal law section 220. But that is exactly, I think, the question that I've got, which is Hartman relates to a particular statutory provision under New York law. And your friend on the other side talked about overbreath and indivisibility. Hartman is actually about, I think, divisibility, not overbreath. But I might be wrong about that. In any event, what the argument, the counterargument to your argument is that Minter merges both of those concepts in a way that makes it much, makes it clear, as opposed to not at all clear, that the New York State statutory ground for removability under 39-1, is that what it is? Yes. No longer applies. So Hartman applies with respect to another state statute, and Minter applies directly to this statute. And what you, I think, what the government is saying is, any small sliver, glimmer of hope, you've got to latch on to as your only chance for a motion to reopen. Is there, in your view, not somewhere, something in between, that is something more than a small glimmer, something less than absolute certainty that the government could embrace? Yes, Your Honor, and I think that's encompassed by the concept of reasonable diligence. But notably, the arguments about the overbreath of his statute of conviction were available in 2007. As this Court pointed out in Minter, the statute has been overbroad since 1978. He also pointed out to, in his motion to reopen, he pointed to multiple decisions from the courts of appeals, which had — Yeah, but the problem with all that is that there's, you know, under the federal rules of civil procedure, you have vast flexibility in making arguments. If you are going to make the argument you're making in conjunction with Rule 11 and Rule 12, then it's almost boundless. No, Your Honor. The point Mr. Minter — or, excuse me, the petitioner, in this case, believes and is arguing that his conviction was no longer a removable offense based on a mismatch between the isomers of cocaine criminalized under New York law versus under federal law, as the Supreme Court has — And he was right about that, wasn't he? Yes, Your Honor, but — Go ahead. I'm sorry. I cut you off. Go ahead. No, of course, Your Honor. The point is that the Supreme Court has long — has recognized that the categorical approach has a long pedigree in immigration law. These arguments were available to the petitioner in this case, be it from 2007 or after this Court issued Harbin. And whether or not Harbin undermined the basis of his charge of removability relates more to whether that is an extraordinary circumstance, which is a separate and independently dispositive ground for — requirement for equitable tolling. Here, the requirement — the ground for the agency's decision was a lack of diligence. So even apart from whether Harbin was an extraordinary circumstance or Minter was an extraordinary circumstance, in the — What was the lack of diligence? I mean, he was familiar with Harbin, but he didn't make the motion earlier? Correct, Your Honor, that the arguments about the mismatch between the isomers of cocaine understate — But suppose a reasonable counsel would say these are low-probability arguments. He still has to pursue them. And as Minter demonstrates — That makes absolutely no sense. You know, we were born at night, but we weren't born last night, counsel. Respectfully, Your Honor, they were succeeding arguments for Mr. Minter. If the attorney for Mr. Minter had said these arguments have very low chance of success, nobody would have ever raised these arguments. And that's the point of a diligence requirement. They have 60 percent chance of success, but this is your only chance. If you don't make — if you don't win on this argument that 60 percent, 60, 65 percent likely to succeed, you've — your one shot is gone. And I see this case, Minter, coming down the pipe, but it's going to be a year or so before that's adjudicated. So we can't wait for Minter. We've got to go now. Correct your — What do you advise a client to do in that circumstance? I would say file now to be diligent. And then once Minter has decided, if necessary, if my case is already wrapped up, if necessary, pursue a petition for review before this court. And your brief would say, you have shot your one shot. Goodbye. Go away. That's what the government would say. It would depend on what — Everything is contingent, counsel. Yes, Your Honor, but it would depend on the ground on which the board ruled on the motion. And notably, Minter demonstrated that arguing about the overbreadth of the statute was not a — some probability of success. Mr. Minter succeeded on the same arguments that were available to the petitioner. Respectfully, Mr. — in Minter, it was the same statute, 220.39 subsection 1. So I'm going to go back to my glimmer analogy a little bit. But I take it your position is that any incremental change in law is a reason to start the clock ticking, at least with respect to the diligence analysis. Is that correct? Not necessarily. It's just make the available arguments. As the government pointed out, arguments about the mismatch between the isomers of cocaine have been available to litigants across the country for decades. All it took for the petitioner and Mr. Minter to make this argument was comparing the New York statute versus the federal statute. And that's directly what this Court said in Arabala. So even before — I mean, really, your position — okay. And I thought that this is what I heard. Well, before Harbin, he should have made this argument. It was available before Harbin. No, no, no. You say it was available. Well, in the government's view, he should have made this argument well before Harbin because it was available before Harbin. Correct, Your Honor. And that's what diligence requires. That's consistent with the Supreme Court's understanding of — Because the argument had been made by others, refuted by a number of different courts, even though ultimately one court, Harbin, embraced it, and Minter then embraces a more robust argument. You say that — forget all that — from inception, upon removability, when he was removed, he should have made the argument in a motion to reopen. Is that the argument? He could have made the motion. He could have made the argument before the immigration judge. He could have made it on direct appeal to the board. He could have made it before — right. He was removed. Yes. That's the argument. Correct, Your Honor. That is diligence. It is not diligence to sit by and do nothing for years as other people raise available arguments and then succeed on them. The Supreme Court and this Court has said that an individual has to demonstrate diligence throughout the entire time he seeks to talk. So then he's required to make arguments for which there's practically no authority on the hope that some I.J. or some BIA group will ultimately agree with him? On the prayer. On the prayer. Go ahead. No, Your Honor. And the point is that he had to exercise diligence to take advantage of available — He read the cases carefully and said there's no case out there that gets me where I need to go. Is that not diligence? No, Your Honor. And respectfully, again, the petitioner attached to his own motion to reopen decisions from 2021 where individuals in immigration proceedings had succeeded on the exact same arguments based on the mismatch. I appreciate your candor and your sticking to your guns. But when the Supreme Court in Holland and some other cases refers to maximum feasible diligence, what does that mean? How do we interpret that? That would be having to do everything available. And that's not the government's argument. The government's point here is that the petitioner did not do anything. And all we have done in our brief is point out that there were things he could have done. Well, no, he didn't. He did something. He did within 30 days of Minter, which is a clear — so he's keeping — clearly keeping track of developments in both New York law and federal law within the Second Circuit. And within 30 days of Minter being published, he moves to reopen. And I appreciate, again, your candor. But why should we view that as not only reasonable but also consistent with the BIA's own case law with respect to the — its expectations of diligence? Respectfully, Your Honor, imagine if Mr. Minter had said the same thing. And I'm not going to make these arguments because nobody's ever succeeded on them before. I only have maybe a 60 percent chance of success. Then there would never be Minter. People have to — somebody has to be the first person to raise the arguments. And it could just as easily have been the petitioner. And notably, the petitioner's citations to the board's authority about incremental changes relates to its sua sponte authority, which is an entirely different context. And in that context, that's where the board has said that perhaps a fundamental change in the law would warrant sua sponte reopening. It says nothing about equitable tolling for purposes of a statutory motion to reopen. What's the government's compelling interest in removing somebody for — on the basis of an offense that's not removable? Respectfully, Your Honor, the Congress and the Supreme Court and this Court have repeatedly emphasized the importance and the strong public interest in finality, that there must be an end to litigation someday, and specifically in the immigration context, to removal proceedings. That's why Congress first directed the agency to promulgate limits on motions to reopen and reconsider and then codify them itself. And the Supreme Court has repeatedly emphasized the importance in finality. So do you understand the puzzle? In other words, in different – let's just take different contexts where you are asking us to embrace a – I think a rule or a position where everyone, from the day that they are removed, may be tagged with the obligation to not only keep track of developments in law, but possible arguments. So take Brown v. Board of Education in 1954. You would be – you could be penalized for not seeing that as an argument in 1924. Or more apropos to this area, you could be penalized effectively by way of an assessment that you have not engaged in reasonable diligence for not seeing some set of developments in law 30 years ago. You had your shot when you were removed 30 years ago. This happened 30 years after you were removed. Too bad. And because someone came up with the argument 30 years later. Do you see – and I appreciate again – and I think you're going to stick to your guns on this, but do you see how difficult a position that is to embrace? Yes, Your Honor. And the government isn't arguing about every sort of outside or fringe random legal theory. But instead, as we pointed out, these arguments about the mismatch between the isomers of cocaine was readily available. The petitioner himself pointed to circuit court decisions from 2020 and 21. So the lack of diligence for even those years would be fatal to a claim of equitable tolerance. Just one. Having listened to your response to the questions of my colleagues, it seems to me that you're resting heavily on something that doesn't come up very often in the administrative law field, which is the possibility of a motion for reconsideration. Isn't that it, basically? In response to Judge Parker's questions in particular, what is it that this petitioner would do, having been unable to guess what the development of the law would be? You would have him wait to see what the development of the law is, right? But all of your arguments over the last half an hour, 45 minutes, have failed to reckon with the consequences of an incorrect guess. They're fatal. I'm sorry, Your Honor? Failed to reckon with the consequences of what? I try to guess about what the BAI would do when I urge on them to consider moving a step beyond the established law. If I'm wrong, the consequences for my client – if my hunch, what I suspect, what my intuition, my experience tells me is wrong, my client suffers the most serious consequences. In your brief, in response to the motion, we'll talk about the need for finality. You've got one chance and so forth and so on. Your arguments can't accommodate those problems, in my opinion. I can't speak for my other colleagues. If I just may offer one brief response to that, I think the Supreme Court's decision in Gonzales v. Crosby is relevant to that. There, the Supreme Court said a petitioner was not diligent in pursuing his challenges to a final judgment in his habeas case, even though there was binding circuit court authority that was contrary to his claim. The petitioner could have argued, according to the Supreme Court, could have sought a certificate of appealability, rehearing, or petitioning for cert. If petitioning for certiorari – That's Gonzales v. Crosby. Yes, Your Honor. And if petitioning the Supreme Court for certiorari is not maximum feasible diligence, neither is requiring the petitioner to raise available arguments sometime in the 16 years following his removal order. Thank you. Thank you. Your Honor, I just wanted to address a few points. One thing I don't appear – that it didn't appear that my friend on the other side acknowledged is that Mr. Ramsey was removable after Harbin based on his original predicate conviction. To clarify the difference between Harbin and Minter, But Mr. Ramsey's removal order hinged on whether the term narcotic drug, and specifically cocaine, was overbroad and indivisible. And while both of these terms relate to drugs, they're different. Narcotic drug is narrower than controlled substance. The drug cited in Harbin that demonstrated its overbreath of controlled substance didn't. So I think what you heard was a more robust, more aggressive argument. Forget Harbin. There were signposts prior to Harbin that should have let an imaginative or just a regular petitioner understand that the argument was available that eventually evolved into Minter. Could you address that question? Yes, Your Honor. If the question is, was the argument available since the statutes were on the books, then there is no dispute that the statutes were what they were when they were entered. This Court has recognized the great difficulty in raising overbreath challenges. It's an immense task. You have to compare two statutes that recite drugs by name. You may need chemists involved to compare the drugs covered by text in one statute to another. And then once you find, perform a chemical analysis, you have to present the legal arguments. So whether if the government's position is that after Harbin opened the door to indivisibility and overbreath of controlled substance, that somehow indicated an argument would be available that cocaine is also overbroad, the analysis is entirely different. Speaking to overbreath and indivisibility. You don't understand. So the argument is, I think, more aggressive. The argument is that Mr. Minter made the argument, and I think I was on the panel, and he prevailed. And so the argument was always available or within some bandwidth of time. It's certainly well available even before Harbin. And you cite two cases where the argument was made. That's the argument. That's correct. I'm not familiar, Your Honor, off the top of my head of the exact cases my friend on the other side is referring to as this 2021 decision. But to the extent the argument that a petitioner needs to make every available argument to them, whether it's to the original I.J., the immigration judge, or in a motion to reopen or reconsider subsequently thereafter, that's not the standard that this Court has endorsed, and the BIA itself hasn't endorsed that standard. In one of the decisions that we attached in the supplemental appendix, the BIA itself found Minter was both an extraordinary circumstance and filing within 30 days was diligence. And to the extent those. What case was that? That is. Your Honor.  That was In Re Luis Antoni Mejia Martich, and it's cited at our supplemental appendix number 37. And so to the extent that's a legal application, the BIA has to apply the law consistently between similarly situated individuals. It's not that it's an unpublished decision that has no bearing, but if the BIA is going to apply two different standards to two different similarly situated individuals, it needs to explain why. And here, the only rationale that the BIA provided was that Harbin, by Mr. Ramsey's own admission, opened the door to a potential argument, and he didn't take it, and that's why he wasn't diligent. So the government's position that he should have moved well earlier, that their argument was available when the statutes were put on the books, that's beyond what the BIA provided us. So let me ask you, what is the, to try to simplify things for a person like me who looks for simplicity, what is the decree that you want from this court? You've come here, and you're asking for relief. What is the relief you want, and how would you frame it? What's the decree, the language? I would say that there are two requests in terms of the decree. At a minimum, the board erred here in its reading of Mr. Ramsey's motion, and it had demonstrated either an error of law or an abuse of discretion, however the court wants to phrase it. The end result is the same. It got it wrong when it decided this case. And that would be a remand? That would be a remand. Okay. But in this instance, because this is a legal question, this Court should decree that moving within 30 days of minter, which conclusively undermined his basis of removal, is an extraordinary circumstance, and he was diligent in bringing his motion within 30 days and is entitled to equitable toll. And it's an extraordinary circumstance even under the BIA's own case law? Under the case I had provided to Your Honor, yes. What page here? That was S.A. 37. S.A. 37. And, in fact, Your Honor, the court rejected the government's arguments there that Harvin constituted that fundamental change of law. If we remanded simply because the agency below had misread the submission concerning Harvin, would that authorize them to apply or could we then at that point require them to apply minter? Yes, Your Honor. In any remand, you could instruct the BIA that minter was a fundamental change of law that should be entitled to equitable tolling, although it wouldn't necessarily have to go back to the board for this court to make that determination. So that's just another way of getting at the second approach that you recommend? Yes, Your Honor. Great. Thank you both. Thank you very much. We gave you a hard time, but that's our job. Judge Kouvanos, any further questions? That's fine. Excellent. Thank you. Thank you very much. Very helpful. We'll reserve the decision, obviously.